UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br><br>SPENCER J. STEELE; JAY SORDEAN as the successor trustee of THE DESERT LAKE TRUST CREATED ON OCTOBER 1, 2005; and STEWART TITLE COMPANY as the successor in interest to STEWART TITLE OF DOUGLAS COUNTY,<br><br>　　　　　　　　　Defendants. | Case No. 3:18-cv-00063-MMD-WGC<br><br>ORDER |

**I.　SUMMARY**

Plaintiff United States of America ("Government") brought this action seeking federal tax assessment judgment against Defendant Spencer J. Steele ("Steele") and to foreclose federal tax liens against real property located at 1883 Genoa St., Gardnerville, NV 89410, Assessors Parcel No. 1022-29-201-012 ("Property").[1] This order concerns the Government's motion and Steele's cross-motion for summary judgment (ECF Nos. 28, 42) as well as Defendant Jay Sordean's opposition to the Government's motion for entry of clerk's default (ECF Nos. 30, 49). Because the latter was filed after the Clerk entered the requested default (*see* ECF No. 32), the Court deems Sordean's opposition as a motion to set aside the Clerk's entry of default. Ultimately, the Court grants the Government's motion for summary judgment (ECF No. 28), denies Steele's cross-motion (ECF No. 42),

///

///

---

[1] ECF No. 28-12 (indicating the address is a "St." and not "Ln"); *see also* ECF No. 28-12 at 64.)

and denies the motion to set-aside the Clerk's entry of default (ECF No. 49).[2,3] The Court also grants Steele's pending motion to strike (ECF No. 46).

**II.     BACKGROUND**

The relevant facts are undisputed, unless otherwise indicated.

**A.     Defendants & Property**

Steele is alleged to be indebted to the Government for failing to pay his personal federal income tax liabilities for tax years 2004, 2005, 2006, and 2009 and the Government contends he is the true owner of the Property. (ECF No. 1.) Sordean was named a party because he holds the nominal title to the Property as the successor trustee of the Desert Lake Trust ("DLT"). (ECF No. 28-12 at 31; ECF No. 28 at 2.) Stewart Title Company is the successor in interest of the Stewart Title of Douglas County ("Stewart Title"). (ECF No. 1.) The latter is the named trustee under the pertinent Deed of Trust with Assignment of Rents ("DOT") attached to the Property. (*See, e.g.*, ECF No. 28-12 at 58.)

The Property is described as:

> THE WEST 165 FEET OF THE NORTH 1/2 OF THE SOUTHWEST 1/4 OF THE SOUTHEAST 1/4 OF THE NORWESTET 1/4 OF SECTION 29, TOWNSHIP 10 NORTH, RANGE 22 EAST, M.D.B. & M.

(ECF No. 1 at 3; ECF No. 28-12 at 62.)  DLT's asset consists only of the Property and has no money and income beyond what it receives from Steele as rent. (*See, e.g.*, ECF No. 28-9 (Steele Depo.) at 39; ECF No. 28-11 (Sordean Depo.) at 11–13.)

///
///
///
///
///

---

[2] In addition to the referenced motions, the Court has considered the respective oppositions (ECF Nos. 45, 49, 50. 57) and replies (ECF Nos. 55, 56, 59).

[3] Because the Court deems Sordean's opposition as a motion to set aside the Clerk's entry of default, the Government's related reply (ECF No. 55) is regarded as its opposition to that motion. Given the Court's finding *infra*, the Court finds a reply unnecessary.

## B. Underlying Facts

### 1. Steele's Tax Liabilities

Steele last filed federal income tax returns in 2003. (ECF No. 28-3 (Steele Testimony) at 10.) Thereafter, he "became of the opinion that [he] was not liable for federal income tax, and therefore was not liable to keep [his] records or file any returns." (*Id.*)

During the four years at issue, Steele received income from various sources, which was reported to the Internal Revenue Service ("IRS") by third parties on various information returns—1098, 1099-G, 1099-Misc, 1099-S, etc. (ECF No. 28-1 (Schubert Decl.) at 2; ECF No. 28-2; ECF No. 28-3.) Without input from Steele, the Government calculated his income based on the third-party information for the relevant four years. (ECF No. 28-1 at 2; ECF No. 28-3; ECF No. 28-4 at 11–52.) The IRS then sent Steele or DLT statutory notices of deficiency pursuant to 26 U.S.C. § 6211–6212. (ECF No. 28-1 at 2–3; ECF No. 28-4) These notices provided Steele's tax liabilities and explained the IRS's calculation. (*Id.*) The Government contends that because Steele did not *petition* for redetermination of his noted deficiencies under 26 U.S.C. § 6213, the IRS made timely assessments against him for unpaid federal income taxes, penalties, and interest set forth on the notices of deficiency. (ECF No. 28 at 4; ECF No. 28-1 at 2; ECF No. 28-5.)

### 2. Purchase of the Property, Formation of DLT

Steele testified to loaning DLT $422,000.00 in fall 2005 to purchase the Property. (ECF No. 28-9 at 33; ECF No. 28-12 at 63.)

Initial Escrow Instructions for the Property, dated September 28, 2005, shows "title vested in: Spencer J. Steele." (ECF No. 28-12 at 64.) Stewart Title appears to have prepared an Escrow Instructions Signature Page, which the sellers of the Property, Clifford E. Clinton and Rena C. Clinton ("Sellers"), signed. (*Id.* at 72.) On the same signature page, a portion titled "Buyer (s)" follows Sellers' signatures and provides "Spencer J. Steele" under a signature line, but is not signed. (*Id.*) Instead, a different—but substantively the same—signature page, excluding Sellers' signature provides DLT is the buyer, which Bill Driscoll ("Driscoll") signed as trustee of DLT. (*Id.* at 73.) It appears Steward Title also

prepared the latter signature page. (*Id.*) Supplemental Escrow Instructions, dated October 7, 2005, amended the prior instructions and provides:

> The Buyer in this transaction shall be amended to read: BILL DRISCOLL, TRUSTEE OF THE DESERT LAKE TRUST CREATED OCTOBER 1, 2005

(*Id.* at 74.) This document was signed by Sellers and Driscoll. (*Id.*)

A Grant, Bargain, Sale Deed ("Deed of Sale") conveys title from Sellers to BILL DRISCOLL, TRUSTEE OF THE DESERT LAKE TRUST CREATED OCTOBER 1, 2005. (ECF No. 28-12 at 56.) The Deed of Sale is dated September 20, 2005. (*Id.*)

DLT is noted as "formed" on October 1, 2005, (ECF No. 28-12 at 15), but the certificate of its existence and authority and other trusts documents were signed several days later (*id.* at 15–33). The document creating DLT shows Driscoll as DLT's trustee at the time of its creation. (*Id.* at 15.) The same document shows J. Dennis Scarbrough as DLT's creator. (*Id.*) Sellers notarized the Deed of Sale on October 6, 2005, and it was recorded on October 14, 2005. (*Id.* at 56.)

Steele was asked about the creation of DLT at his deposition in this case:

> Q   Did you ask for it to be created? Did you direct it to be created? Or did you discuss it with people who created it?
>
> A   It was recommended to me as an estate planning move in anticipation of my death. And, you know, I lent money to the trust to buy the property, so to that extent I was involved.
>
> . . .
>
> Q   Do you know - - do you understand what it's supposed to accomplish?
>
> A   My understanding is that the trust is supposed to be a separate legal entity. So that if, for example, like you're trying to do, somebody comes after me for money they claim I owe, the trust will not be responsible for that.

(ECF No. 28-9 at 35–36.) Steele further testified that he chose DLT's beneficiaries—his cousins. (*Id.* at 36–37.)

The DOT attached to the Property, dated "20th day of September, 2005[,]" but recorded on October 14, 2005, notes that the DOT is made between the following entities and person:

4

> BILL DRISCOLL, TRUSTEE OF THE DESERT LAKE TRUST CREATED OCTOBER 1, 2005 . . . herein called "Trustor", STEWART TITLE OF DOUGLAS COUNTY, . . . herein called "Trustee", and Spencer John Steele, (whose address is c/o Re/Max Bill Driscoll . . . herein called "Beneficiary."

(ECF No. 28-12 at 58.) The DOT additionally provides:

> That Trustor irrevocably grants to Trustee in trust, with power of sale, all interest of Trustor in that certain property situate in DOUGLAS County . . .
>
> TOGETHER WITH, the tenements, . . . and appurtenances . . . and the reversion . . . . remainder . . . rents, issues and profits . . . subject, however, to the right of the *Beneficiary*, during any period of default hereunder, and without waiver of such default, to collect said rents, issues, and profits . . .

(*Id.*) (Emphasis added.) The DOT further provides that should default occur the following would happen:

> [T]hen Beneficiary may declare all sums secured hereby immediately due by delivery to Trustee of a written declaration of default and demand for sale, and written notice of default and election to cause said property to be sold . . . .

(*Id.* at 60.)

A Note Secured by Deed of Trust dated September 20, 2005, and signed by Driscoll as trustee of DLT—yet to be created as of that date, reflects an installment agreement to pay Steele installments of $2,530.10 on the Property's $422,000.00 principal, with interest of six percent annum "from October 14, 2005." (ECF No. 28-12 at 63.) HUD forms for the purchase of the Property shows: the borrower as DESERT LAKE TRUST BILL DRISCOLL, TRUSTEE; and the lender as SPENCER JOHN STEELE C/O RE/MAX ATTN: BILL DRISCOLL. (*Id.* at 78–82.) The same forms reflect a closing date of October 14, 2005. (*Id.* at 78.)

### 3. Rent Agreement

On November 6, 2005, Steele and DLT signed a 99-year lease on the Property with Steele as the renter. (ECF No. 28-12 at 5–13.) Both Steele and Sordean testified that Steele initially paid full monthly rent, but later began to subtract each month's loan repayment amount from the monthly rent and sends the difference to the trustee for rent. (ECF No. 28-9 at 32–33; ECF No. 28-11 at 12–13.) The arrangement was done to reduce DLT's administrative expenses. (*Id.*; ECF No. 45 at 4.)

### 4. Notices of Federal Tax Liens

The IRS has filed several Notices of Federal Tax Liens naming Steele or DLT as the taxpayer. (ECF No. 28-6.) As of December 10, 2018, the combined tax liabilities for Steele, including statutory accruals, for the four years totaled $784,676.25. (ECF No. 28-1 at 3–4; *see also e.g.*, ECF No. 28-7 at 9 (showing $643,387.06 balance due as of "11/30/2018").) Interest continues to compound daily on that total. (ECF No. 28-1 at 4.)

### 5. The Complaint and Motions for Summary Judgment

In the Complaint, the Government alleges four claims for relief: (1) to reduce judgment for federal income taxes against Steele; (2) to disregard DLT as a sham trust, nominee, or alter ego of Steele and determination that Steele is the true owner of the Property; (3) to "avoid" fraudulent transfer of the Property under NRS §§ 112.180 and 112.190; and (4) to foreclose the federal tax liens on the Property. (ECF No. 1.) The Government chiefly seeks to seize the Property, which it claims is deceptively documented as owned by DLT, to satisfy Steele's alleged federal tax liabilities. (*See generally* ECF Nos. 1, 28.)

## III. MOTION TO STRIKE (ECF NO. 46.)

Under Rule 12(f) a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." A matter is "immaterial" if it has no bearing on the controversy before the court. *In re 2TheMart.com, Inc Sec. Litig.,* 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000). Here, Steele moves to strike his notice to the Court for jury demand, dated "December 11, 2018" because the document date is erroneous and because he has filed another notice, dated "January 14, 2019[.]" (ECF Nos. 46, 25, 44, 47; *see also* ECF No. 33.)[4] The Court will grant the motion as the former notice is therefore redundant and immaterial.

///

///

---

[4] The docket shows Steele filed the first notice on November 21, 2018 (ECF No. 25) and the Court ruled permitting him to refile the notice on December 11, 2018 (ECF No. 33).

1  **IV.    MOTION TO SET-ASIDE ENTRY OF CLERK'S DEFAULT**

The Court must find good cause to set aside a Clerk's entry of default. *United States v. Signed Pers. Check No. 730 of Yurban S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing Fed. R. Civ. P. 55(c)). In making that determination, the Court considers the following three factors: "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default judgment would prejudice" the other party." *Id.* (internal quotation and citation omitted). This standard "is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* (citation omitted).

Here, the Government requested default because the *only answer* Sordean filed in this action was on behalf of (or to represent) DLT—even though he is a non-lawyer and because he was only named in the suit as the Property's nominal title holder. (ECF No. 30.) The Government also noted that the Court struck Sordean's answer on DLT's behalf. (*Id.*; ECF Nos. 9, 24.) These facts have not changed—the Government highlights this in responding to Sordean's opposition (ECF No. 55).

Because Sordean has entered this action only on behalf of DLT which he cannot legally represent and this Court struck his only answer, the Court concludes the Clerk's entry of default was valid. Sordean can present no meritorious defense to the default. Sordean's request to set aside the default (ECF No. 49) is therefore denied. Accordingly, Sordean's opposition to the Government's motion for summary judgment on behalf of DLT (ECF No. 50) is stricken. The Court therefore does not consider Sordean's arguments in analyzing the parties' motions.

**V.    MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT (ECF NOS. 28, 42)**

    **A.    Legal Standard**

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting *William W. Schwarzer, et al.*, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

///

**B.     Discussion**

In addition to contesting the Government's claim that he incurred the noted tax liabilities, Steele challenges the Government's standing to bring suit against him and the existence of "personal, subject matter, territorial or exclusive legislative jurisdiction in this case." (*See, e.g.*, ECF No. 42 at 2.) The Court addresses these jurisdictional arguments before considering the merits of the parties' claims.

**1.     Subject Matter & Personal Jurisdiction**

Steele makes numerous incomprehensible and baseless arguments regarding the Court's ability to exercise subject matter jurisdiction over this case and personal jurisdiction over him. (ECF No. 42 at 14–15.)  For example, Steele argues a lack of jurisdiction contending that the states "retained full and complete jurisdiction over their lands and persons within their borders." (*Id.* at 14.)

As to subject matter jurisdiction, Steele chiefly contends that jurisdiction is lacking because he has incurred no tax liability. (*Id.* at 15.) In response, the Government makes it clear that the Court has original jurisdiction over these proceedings (ECF No. 57 at 6). *See, e.g.*, 28 U.S.C. § 1340 ("The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade); 28 U.S.C. § 1345 ("Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.").

That this Court has personal jurisdiction over Steele is also unquestionable. It is undisputed that Steele is domiciled in Nevada and his alleged tax liabilities were incurred and accrued while a citizen and resident of this state. Moreover, the Property for which Steele is alleged to own is located within the District of Nevada. Thus, as it is not disputed that Steele was properly served in this action, the Court finds it has jurisdiction over Steele. *See* Fed. R. Civ. P. 4(k); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801

(9th Cir. 2004) (explaining that general jurisdiction exists where a defendant has continuous and systematic contacts with the forum state and that a "finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of [his] activities anywhere in the world").

### 2. Standing

Steele's contention that the Government lacks standing to bring this action is similarly baseless. The Government essentially claims that it has been injured by Steele's failure to pay his taxes and the Government has statutory authority to bring suit to affirm the tax assessments against Steele and to seek foreclosure on the Property it claims Steele owns. That is more than enough for a finding of standing here.[5] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining the three elements that must be met for standing to be established).

### 3. The Merits

In considering the merits of the Government's claims, the Court begins with the long-established principle that "[a] tax is an exaction by the sovereign, and necessarily the sovereign has an enforceable claim against everyone within the taxable class for the amount lawfully due from him." *Bull v. United States*, 295 U.S. 247, 259 (1935).

The Government seeks summary judgment on two claims: (1) that Steele owes the United States $784,676.25 (plus accruals) for the relevant tax years—2004, 2005, 2006 and 2009; and (2) that the Government may enforce its tax liens against the Property to satisfy Steele's outstanding tax liabilities under multiple legal theories. (ECF No. 28; ECF No. 56 at 2–5.) Steele's opposition and cross-motion largely focuses on establishing that Steele had no tax liability, cursorily contends that the IRS lacked a basis to verify the

///

---

[5]*See, e.g.*, 26 U.S.C § 7403(a) ("In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.").

correctness of the provided payors/withholding agents' (i.e., the third-parties') returns information, and argues it is disputed whether he owns the Property. (*See generally* ECF Nos. ECF No. 42, 45, 59.) The Court will first consider the issue of liability then turn to whether the Government may enforce its tax liens against the Property.

### a. Liability

As to liability, the Government bears the initial burden of proof in actions brought to collect federal taxes. *Palmer v. IRS*, 116 F.3d 1309, 1312 (9th Cir. 1997). To satisfy this burden, the Government may "introduc[e] into evidence its assessment of taxes due. Normally, introduction of the assessment establishes a prima facie case." *Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990) (internal citations omitted).

A presumption of correctness attaches to the assessment(s) in a tax refund lawsuit. *United States v. Janis*, 428 U.S. 433, 440 (1976). Therefore, the defendant has a "burden of proving that he paid the correct amount of his tax liability." *Id.*

The Court finds that the Government has carried its initial burden. Here, the Government provides multiple Certificate of Assessments, Payments, and Other Specified Matters ("Forms 4340") to establish that valid tax assessments have been made against Steele. (ECF No. 28-1 at 2; ECF No. 28-5.) Forms 4340, are "routinely used to prove that a tax assessment has in fact been made." *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (citations omitted). They are probative evidence—admissible as a public record—of valid assessment and that notice and demand were sent. *See, e.g.*, *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam).

As to Steele's burden, the Court notes that Steele does not dispute that he received income during the relevant tax years or the specific amounts the Government claims he owes. (*See generally* ECF Nos. 42, 45, 59.) Instead, Steele chiefly argues that he is not liable for federal taxes for various reasons. For simplicity and thoroughness, the Court first considers Steele's main arguments as provided in his briefs.

In his opposition and cross-motion, Steele centrally argues: (1) that he does not owe taxes based on Treasury Decision (T.D.) 8734; (2) claims—by extension—that

because his income was non-taxable, the IRS essentially relied on "bad payor data[;]" and (3) attempts to draw a distinction between "tax imposed" and "tax liability." (*See, e.g.*, ECF No. 42 at 2–6; ECF No. 45 at 7–8.) As to T.D. 8734, Steele particularly cites to a paragraph from the "Comments and Changes to § 1.1441-1"[6] to argue that he is not subject to income tax as a U.S. person, as opposed to a foreign person. (*See, e.g.*, ECF No. 42 at 2–6; ECF No. 45 at 6–8.) As to the related second reason, Steele claims his "payors" therefore should not have reported his salary to the IRS on the various information returns the Government relies on, and the IRS should not rely on that information to establish his income. (*Id.*) As to the "tax imposed" and "tax liability" distinction, Steele posits that pertinent Internal Revenue Codes ("IRC") "impose" taxes on *things*—here income—and says nothing about tax liability—which a *person* would be required to pay. (*See, e.g.*, ECF No. 42 at 6–11.) He concludes that he is thus not liable for taxes. (*Id.*)

As a preliminary matter, the Court finds that T.D. 8734 does not apply to Steele. As the Government points out in its reply to Steele's opposition (ECF No. 57), T.D. 8734 contains regulations related to the withholding of income tax under 26 U.S.C. §§ 1441, 1441, and 1443 *on certain U.S.-source income paid to foreign persons*—which Steele is not. *See* T.D. 8734, 62 FR 53387-01, 1997 WL 33463535 (F.R.) (October 14, 1997). Accordingly, Steele's second argument which is premised on his not having any properly reported tax liability based on T.D. 8734 lacks grounding.

Additionally, Steele's "tax imposed" and "tax liability" distinction is confounding. In response to this argument, the Government points to the particular IRC sections that requires a person, like Steele, to pay income taxes (*see, e.g.*, ECF No. 57 at 4–5). In short, 26 U.S.C. § 1 imposes tax on individual income. Section 6012 explains the persons required to make returns on income. Section 6201 gives the IRS the duty and authority to "make the inquiries, determinations, and assessments of all taxes (including interest,

///

---

[6]Department of the Treasury Internal Revenue Service, *Internal Revenue bulletin*, Bulletin No. 1997–44 (Nov. 3, 1997), *available at* https://www.irs.gov/pub/irsirbs/irb97-44.pdf.

12

additional amounts, additions to the tax, and assessable penalties)." 26 U.S.C. § 6201(a). Further, § 6151 essentially provides that a person who is required to file a tax return is required to pay taxes "without assessment or notice and demand" and "at the time and place fixed for filing the return." 26 U.S.C. § 6151.

In the reply supporting his cross-motion, Steele argues that the Government wrongly "assumes" he was "the person made liable for the [f]ederal income taxes at issue in this case" (ECF No. 59 at 6). He appears to argue that he is at most subject to 26 U.S.C. § 1461, which he contends makes the person required to withhold and deduct taxes liable for the federal income taxes at issue here. (*Id.* at 6–8.) Steele relatedly argues that he is not a payee subject to the IRS's authority or any withholding provision. (*Id.* at 8–9.) Based on the above discussion—in the immediate preceding paragraph, the Court reject's these arguments.

Steele next appears to argue that at best the Government asserts a presumption that the "third-party's 'illegally-reported' payments on the third-party information returns" are correct. (*Id.* at 9.) But, the Government expressly asked this Court to draw an adverse inference against Steele as to his tax liability based on the third-party information (ECF No. 28 at 9)—and the Court does. On the other hand, beyond insisting that he had no tax liability, Steele provides not even a scintilla of evidence to create an inference that the information from third-party returns was in fact wrong, or should be amended. At most, Steele argues that the IRS lacked a basis to verify the correctness of the returns' information "his payors/withholding agents prepared." (ECF No. 59 at 10.) This argument cannot overcome the presumption that the third-party information is accurate. Notably, Steele asserts his rights under the Fifth Amendment in refusing to answer questions regarding his income. (*See, e.g.*, ECF No. 28 at 9; ECF No. 45 at 4–5 (providing that Steele invoked his rights as noted because he believes the Government "continues to misapply bad payor data based on erroneous, false, fraudulent information returns").) *But see Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) ("In assessing income taxes, the

///

Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return.").

In sum, the Court concludes that the Government carried its initial burden to establish Steele's tax liability for the tax years 2004, 2005, 2006 and 2009. Further, Steele fails to sufficiently dispute that the third party-returns-information the Government relies on correctly reflects Steele's income and tax liability. The Court therefore grants the Government's motion for summary judgment on its claim that Steele owes the United States $784,676.25 (plus accruals) for the relevant tax years.

### b. Tax Liens

However, the Government may impose a lien on the Property to recover for Steele's tax liabilities only where the Court concludes that Steele is the true owner or beneficiary of the Property to which DLT/Sordean holds nominal title. (*See* ECF No. 28 at 10 (appearing to acknowledge this much).) The Court so concludes.

Under IRC provisions, "to satisfy a tax deficiency, the Government may impose a lien on any 'property' or 'rights to property' belonging to the taxpayer." *Drye v. U.S.*, 528 U.S. 49, 57 (1999). Particularly, Section 6321 provides that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The Supreme Court has broadly interpreted this language to mean that "Congress meant to reach every interest in property that a taxpayer might have." *Id.* at 56; *see also Fourth Inv. LP v. U.S.*, 720 F.3d 1058, 1066 (9th Cir. 2013) ("The IRS has broad powers to impose federal tax liens under 26 U.S.C. § 6321."). The property that the government may reach includes "property that is held by a third party as the taxpayer's nominee or alter ego." *Fourth Inv. LP*, 720 F.3d at 1066 (internal quotation and citation omitted). "It also includes property in the hands of a successor corporation . . . where the transaction is fraudulently entered into." *Runvee, Inc. v. U.S.*, No. 2:10–CV–2260–KJD–GWF, 2013 WL 1249602, at *10 (D. Nev. March 26, 2013) (citation omitted).

Here, Steele argues that various disputed facts preclude a finding that he owns the Property. (*See, e.g.*, ECF No. 45 at 3–5, 9–11.) The Government contends that Steele is the beneficial owner of the Property and it may enforce its tax liens against the Property to satisfy Steele's outstanding tax liabilities based on four mutually independent legal theories. (ECF No. 28 at 18; ECF No. 56 at 4.) The Government argues: (1) the nominee doctrine; (2) the alter ego doctrine; (3) the sham trust doctrine; and (4) that DLT's purchase of the Property was a fraudulent transfer as to the United States. (*Id.*) The Court finds that while DLT is legally a separate entity, the Government has established undisputed facts supporting a conclusion that DLT is effectively Steele's nominee and/or a sham trust. The Court will therefore grant the Government's motion for summary judgment on its first and third theories and does not consider the others.

'A nominee is one who holds bare legal title to property for the benefit of another.' *Fourth Inv. LP*, 720 F.3d at 1066 (quoting *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2011)).

> Typical nominee . . . scenarios start with people falling behind on their taxes. Facing the loss of their homes or businesses to the federal government some taxpayers take steps to try to separate themselves from their valuable assets. The taxpayer's house may be deeded to a friend, although the taxpayer continues to reside there. Or perhaps all the taxpayer's cash disappears, yet the taxpayer's personal bills are being paid by a closely-held and controlled corporation. The factual scenarios are as creative and varied as are taxpayers themselves. However, the tax collector's reaction is usually consistent: upon discovering that a third party is being used to thwart the IRS's collection efforts, the government will file a notice of a federal tax lien identifying the third-party target as the taxpayer's nominee or alter ego and will attempt to satisfy the tax liability from assets held by the third party.

*Id.* at 1066 n.3 (quoting Teresa Dondlinger Trissell, *A Uniform Standard for Alter Ego and Nominee Tax Litigation,* 58 Fed. Law. 38, 38 (2011)).

The use of the nominee doctrine to collect federal taxes has been approved where the nominee is a trust. *See, e.g.*, *United States v. Marsh*, 114 F. Supp. 2d 1036 (D. Haw. 2000); *The Colby B. Found. v. United States ("Colby")*, 1997 WL 1046002 (D. Ore. 1997), *aff'd*, 166 F.3d 1217 (Table), 1999 WL 24542 (9th Cir. 1999). "It is not necessary that the taxpayer ever hold title to the property in its own name in order for the IRS to levy against

it; the IRS may levy against property held in the name of the taxpayer's nominee." *Colby*, 1997 WL 1046002 at *20 (citing *Tri-state Equip. v. United States,* 1997 WL 376264, at *11 (E.D. Cal.1997); *United States v. Klimek*, 952 F. Supp. 1100 (E.D. Penn. 1997) & *LiButti v. United States,* 107 F.3d 110 (2nd Cir.1997)). "A trust will be considered the nominee of a taxpayer when the taxpayer maintain[s] an absolute position of authority over the affairs of the trust . . . [and there is no] need to consult anyone else in making decisions for the Trust." *Id.* (internal quotation and citation omitted).

In applying federal tax lien statutes, courts must consider questions of "both state and federal law" because the statutes merely attaches federally defined consequences to state defined property rights. *Id.* at 1067 (citations omitted). "Consequently, in making nominee determinations in a tax lien context, we must look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach." *Id.* (alterations, internal quotations and citations omitted). Where it is determined that the tax payer has an interest in the subject property under state law, the court then turns to "federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.* (quoting *Drye*, 528 U.S. at 58).

Nevada law appears to recognize the nominee relationship as essentially an agency relationship. *See, e.g., Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 258-59 (Nev. 2012). However, although the state recognizes the nominee theory, it does not appear to address the factors necessary to determine whether an entity is the nominee of a taxpayer. Thus, as in *Nelson v. United States*, the Court looks to federal court nominee factors. No. CV-N-89-659-BRT, 1990 WL 169245, at *3 (D. Nev. Sept. 27, 1990), *aff'd in part and remanded*, 942 F.2d 792 (9th Cir. 1991).

The Court considers several factors to determine whether an entity is the nominee of a taxpayer. *See, e.g., Nelson* 1990 WL 169245, at *3. Those factors include:

///

///

> 1) the source of the funds used to purchase the property; (2) the taxpayer's continued use of the property without the payment of a fair rental value; (3) the taxpayer's continued payment of maintenance charges and real estate taxes; (4) the nominees' acquisition of the property without any consideration, or for inadequate consideration; (5) the taxpayer's acts of holding himself out as the owner of the property; (6) the transfer of the property in anticipation of suit or the incurrence of liabilities by the taxpayer; and (7) the relationship between the taxpayers and the nominee, that is, whether it is a close one, such as by blood or marriage.

*Id.* Importantly, the factors are flexible, and the presence or absence of a particular factor is not dispositive because courts focus on the totality of the circumstances. *Fourth Inv. LP*, 720 F.3d at 1070. Nonetheless, "the overarching consideration is 'whether the taxpayer exercised active or substantial control over the property.'" *Id.* (quoting *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999)).

The reasonable conclusion derived from the relevant documents and undisputed facts is that Steele maintained control over the Property through DLT, although Steele testified he has no control (ECF No. 28-9 at 38–39). First, it is undisputed that Steele provided the funds used to purchase the Property. Further and relatedly, Steele describes Driscoll as both the real estate agent who purchased the Property and who "agreed to be the trustee and then he backed out . . . and Sordean took over." (ECF No. 28-9 at 42–43.) In fact, both the DOT and the HUD forms related to the purchase indicate that Driscoll was specifically Steele's agent at the same time he was the purported trustee of DLT. (ECF No. 28-12 at 58, 78 (providing Steele's address as "c/o Re/Max Bill Driscoll . . ." and "c/o Re/Max Attn: Bill Driscoll . . .").) This tends to undermine the idea that the purchase of the Property was an arm's length transaction.

As to the second and third factors, Steele continues to occupy the Property. And, although Steele technically rents the Property the rental arrangement is beyond unusual. Notably, the testimonial evidence establishes that while Steele initially paid monthly rent and Sordean paid Steele the full monthly obligation on Steele's "loan" they later agreed that Steele "would subtract each month's loan repayment amount from the rent amount and send the trustee the difference." (ECF No. 45 at 4; ECF No. 28-11 at 12–13; ECF No. 28-9 at 32–33.) As noted, Steele admits that this arrangement was "for the purpose of

reducing expenses of the trust." (ECF No. 45 at 4.) This evidence suggests that Steele was actively involved and concerned about DLT's financial arrangements and establish that he stopped, at least directly, paying full rental value for his use of the Property. The former is bolstered by Steele's admission that *he chose* DLT's beneficiaries. Moreover, the facts support that the surplus offset rent Steele pays DLT is DLT's only income which the latter in turn would need to use to pay any maintenance charges or taxes on the Property. (*See, e.g.*, ECF No. 28-9 (Steele Depo.) at 39; ECF No. 28-11 (Sordean Depo.) at 11–13.)

As to the fourth factor, there is no evidence that DLT provided Steele any consideration for the "loan" to acquire the Property—even considering the initial repayments and "offset" of rent for the loan. (ECF No. 28-11 at 12–13; ECF No. 28-9 at 32–33.) The Government concedes the fifth factor—that Steele does not hold himself out as the owner of the Property. (ECF No. 28 at 11.) But, the DOT attached to the Property provides that Steele is the beneficiary of the DOT and assignment of rents. (ECF No. 28-12 at 58.) As such, under Nevada law Steele is the party entitled to enforce the note on the Property. *See, e.g.*, *Edelstein*, 288 P.3d at 261 (quoting *Monterey S.P. Part. v. W.L. Bangham,* 777 P.2d 623, 627 (Cal. 1989) (explaining that "[b]ecause a deed of trust typically secures a debt owed the beneficiary, it is the beneficiary, not the trustee, whose economic interests are threatened when the existence or priority of the deed of trust is challenged, and noting that the beneficiary is the real party in interest"))).

An examination of the sixth factor—transfer of property in anticipation of suit or incurrence of liabilities by the taxpayer—creates a strong inference that DLT is a sham trust created to protect Steele from having to pay his liabilities. First, DLT was created only after Steele stopped paying taxes because he decided he did not have any tax liability after 2003. When asked about his role in DLT's creation, Steele testified that creating the trust was recommended to him. (ECF No. 28-9 at 35–36.) This exchange is further colored by Steele's statements that DLT is "supposed to be a separate legal entity" so that if, for

///

example, the Government "comes after me for money they claim I owe, the trust will not be responsible for that." (*Id.*)

The last factor—closeness of relationship between taxpayer and nominee only slightly impacts the Court's inquiry. While it is undisputed that there is no blood or marriage ties between Driscoll/Sordean and Steele (ECF No. 45 at 5; ECF No. 28 at 11–12), Steele knows Sordean personally (ECF No. 28-11 at 19–20).

Based on the undisputed facts of this case and considering the totality of the circumstances, the Court concludes that DLT is Steele's nominee and Steele retains the beneficial interests in the Property.

Even if the Court's findings were contrary, the evidence supports the conclusion that DLT is legally a sham for tax purposes and should be voided as such. Under Ninth Circuit caselaw, a sham transaction is where there is "no economic effect other than to create income tax losses." *Neely v. United States*, 775 F.2d 1092, 1094 (9th Cir. 1985) (citations omitted). "Even where a taxpayer has structured a transaction so that it satisfies the formal requirements of the Internal Revenue Code, legal effect will be denied it if its sole purpose is to evade taxation." *Id.* (citation omitted). By Steele's own admission, stated above, DLT essentially serves to protect the Property from being reached by creditors who would come after him for money he owes—including for taxes. The fact that DLT was created after Steele stopped paying taxes creates a strong nexus to conclude that the paramount—if not sole purpose of DLT—was for Steele to evade taxation. Further, the economic reality is that Steele retains the beneficial interests in the Property.

For these reasons, the Court concludes that the Government may enforce its tax liens against the Property to satisfy Steele's outstanding tax liabilities.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Steele's motion to strike (ECF No. 46) is granted.

It is further ordered that Sordean's opposition to the Clerk's entry of default, which the Court deems a motion to set aside the default (ECF No. 49) is denied. Sordean's opposition to the Government's motion for summary judgement on behalf of DLT (ECF No. 50) is therefore stricken.

It is further ordered that Government's motion for summary judgment (ECF No. 28) is granted. The Court concludes that (1) Steele is liable to the Government for taxes in the amount of $784,676.25 (plus accruals as of December 10, 2018) for the relevant tax years and (2) the Government may enforce its tax liens against the Property to satisfy Steele's outstanding tax liabilities.

It is further ordered that Steele's cross-motion for summary judgment (ECF No. 42) is denied.

The Clerk is directed to enter judgment in accordance with this order and close this case.

DATED THIS 7th day of June 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE